SUPREME COURT. Broome, General Term, November, 1860.
*Mason, Balcom, Campbell* and *Parker*, Justices.

CHARLES NELSON, plaintiff in error, *v.* THE PEOPLE, defendants in error.

Where R. and B., two acting justices of the peace, were designated as members of the Court of Sessions of their county for the year 1860, but when so designated were not, within the requirement of the statute, "entitled to serve as justices of the peace during such year by virtue of the election under which they were acting as such justices at the time of such designation," it was held, that their right to act as justices of the sessions could not be questioned on the trial of an indictment before such court, and that it could only be inquired into on a direct proceeding against them by information in the nature of a *quo warranto.*.

The acts of public officers *de facto*, done *colore officii*, under an irregular election or appointment, are valid as respects the rights of third persons and so far as concerns the public.

The public prosecutor may insert several counts in the same indictment alleging the offense distinctly and separately, in various ways, to meet the evidence, and the court will not compel an election between them on the trial.

When the jury render an imperfect verdict, the court may refuse to receive it, and direct them to retire and correct it, and may afterward receive the corrected verdict.

On the trial of an indictment, under chapter 74 of the Session Laws of 1854, it is not necessary for the prosecution to show with what weapon the assault was made or the injuries inflicted. It is sufficient to prove that a *sharp, dangerous instrument* was employed by the prisoner, and the jury have a right to infer such fact from the nature of the wounds.

THIS was a writ of error to the Court of Sessions of Otsego county. It appeared by the return that the following indictment had been found against the prisoner:

*State of New York, Otsego County, ss:*

At a Court of Sessions, held at the court house, in the village of Cooperstown, in said county of Otsego, the 20th day of February, in the year of our Lord one thousand eight hundred and sixty, before Levi C. Turner, Esq., county judge of the county of Otsego, John W. Richardson and Harvey W. Brown, Esquires, justices of the peace of the county of Otsego, duly designated as members of the Court of Sessions of the said

county, all justices assigned to keep the peace in and for said county, and also to hear and determine divers felonies, trespasses and misdemeanors in said county committed, the jurors of the People of the State of New York, in and for the body of the county of Otsego, being then and there sworn, and charged on their oath,

*Present,* That Charles Nelson, late of the town of Cherry Valley, in the county of Otsego, on the 26th day of December, 1859, at the town of Cherry Valley, in said county of Otsego, with force and arms, in and upon one Richard Allanson, then and there being, feloniously did make an assault, and him, the said Richard Allanson, with a certain knife which the said Charles Nelson, in his right hand, then and there had and held, the said knife being a deadly weapon, willfully, maliciously and feloniously, did beat, strike, cut and wound, with intent him, the said Richard Allanson, then and there willfully and feloniously, to kill, and other wrongs to the said Richard Allanson, then and there did to the great damage of the said Richard Allanson against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

*Second count.* Same, alleging the injury to have been done with a chair.

*Third count.* Same, with a certain sharp, dangerous weapon, to the jurors unknown.

*Fourth count.* With a certain sharp cutting instrument, to the jurors unknown, with intent to *maim.*

*Fifth count.* Same, with a knife.

The remaining counts were as follows:

6. And the jurors aforesaid, upon their oaths aforesaid, do further present that the said Charles Nelson, at the town and county aforesaid, on the said 26th day of December, 1859, with force and arms, in and upon one Richard Allanson, then and there being, feloniously did make an assault and him, the said Richard Allanson, willfully and feloniously did beat, strike, wound and ill treat, with intent, him, the said Richard Allanson, willfully and feloniously to kill, to the great damage of

the said Richard Allanson, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

7. And the jurors aforesaid, upon their oaths aforesaid, do further present, that the said Charles Nelson, at the town of Cherry Valley, in the county of Otsego aforesaid, on the said 26th day of December, 1859, with intent, willfully, maliciously and feloniously to do bodily harm to one Richard Allanson, then and there being, and without justifiable or excusable cause in, and upon him, the said Richard Allanson, willfully and feloniously made an assault with a sharp, dangerous weapon, to wit : a certain knife which the said Charles Nelson, in his right hand, then and there had and held, and then and there other wrongs and injuries did to the said Richard Allanson, to the great damage of the said Richard Allanson, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

8. And the jurors aforesaid, upon their oaths aforesaid, do further present, that the said Charles Nelson, on the day and year aforesaid, at the town and county aforesaid, with intent, willfully and feloniously to do bodily harm to one Richard Allanson, then and there being, and without justifiable or excusable cause in and upon him, the said Richard Allanson, willfully and feloniously made an assault with a certain sharp, dangerous weapon, to the said jurors unknown, which the said Charles Nelson then and there had and held, and other wrongs and outrages then and there did to the said Richard Allanson, to the great damage of the said Richard Allanson, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

E. COUNTRYMAN, *District Attorney.*

The case came on to be tried at the August term of the Court of Sessions, 1860, for Otsego county, before Hon. LEVI C. TURNER, county judge, and John W. Richardson and Har-

vey W. Brown, esquires, justices of the peace for said county, and designated as members of said Court of Sessions.

*E. Countryman* (District Attorney), for the People.

*L. J. Walworth, L. I. Burditt* and *J. A. Lynes*, for the prisoner.

Before the jury had been called or sworn, the counsel for the defendant moved the court to quash the indictment, on the ground that the Court of Sessions, as constituted and organized, had no authority or jurisdiction to try the defendant; whereupon the following facts were stated by the justices of sessions, and conceded by the district attorney : The said Harvey W. Brown was duly elected a justice of the peace of the town of Maryland, in said county of Otsego, in March, 1859, for a full term of four years, to commence January 1st, 1860. On the 7th day of November, 1859, Lysander W. Kelly, who was then an acting justice of the peace of the said town of Maryland, having theretofore been duly elected to said office, resigned said office, and said Harvey W. Brown was, on the said 7th day of November, 1859, duly appointed to fill the vacancy occasioned by the said resignation of said Lysander W. Kelly, whose term of office expired on the 31st day of December, 1859; and the said Harvey W. Brown, on the said 7th day of November, 1859, thereupon qualified as justice of the peace under the appointment, and on the 3d day of December, 1859, duly qualified for the full term.

The said John W. Richardson was duly elected and qualified as a justice of the peace of the town of Burlington, in said county, in March, 1855; that his term of office expired the last day of December, 1859 ; and that in March, 1859, he was again duly elected as such justice of the peace for another full term, to commence the 1st day of January, 1860, and has been an acting justice of the peace of said town since the 1st day of January, 1856.

That on the 8th day of November, 1859, the said John W. Richardson and Harvey W. Brown were designated and elected, in the manner prescribed by law, as justices of the sessions in and for said county of Otsego, for and during the year 1860 ;

and the said John W. Richardson and Harvey W. Brown duly took the oath of office, as such justice of sessions, as prescribed by the Constitution, before the 1st of January, 1860.

The above facts were agreed to and conceded by the district attorney and the counsel for the defendant.

And the district attorney here produced and read in evidence, an act of the legislature of the State of New York, passed February 4th, 1860. See *Session Laws*, 1860, *p.* 22, *ch.* 16.

The court denied the motion, holding and deciding that the court was properly organized, and had jurisdiction to try the defendant, to which ruling and decision the counsel for the defendant excepted.

Before the jury were called or sworn, and after the district attorney had moved the trial on the indictment, the counsel for the defendant moved the court to quash or set aside the indictment, on the ground, among other things, that several separate and distinct offenses, with different punishments, were charged in said indictment, which motion was denied by the court, and the defendant, by his counsel, excepted.

And the counsel for the defendant then moved the court to compel the district attorney to elect upon which count or charge in said indictment he would try the defendant, which motion was also denied by the court, and the defendant, by his counsel, excepted.

The same motion above stated, and upon the same grounds, as to the jurisdiction of the court, and the form and contents of the indictment, was made by the. defendant before pleading to the indictment, with the same ruling and exceptions as above.

After which, the jury being empanneled and sworn, the cause was opened on the part of the People by the district attorney, who stated to the jury that he should not claim that the cuts on the body of Allanson were inflicted with the large bowie knife found in the room where the fight occurred, but that some other sharp instrument was used.

*Richard Allanson*, called on the part of the People, testified, among other things, as follows: I went into Henry Nelson's saloon, in Cherry Valley, on the night of the 25th day of

December, 1859, and sat down there; defendant came down there, and said he could whip any man, or any two men, who insulted his woman; after some conversation, I told defendant I thought he could not whip me; he said he could, or would, and if I would step out in the street he would try, and we went out; defendant then said he would not fight any more in the street, but would go into a room, where we could fight it out alone; we concluded there was no room to be had that night, and so we agreed to meet the next morning at 9 o'clock, at Henry Nelson's saloon.

I went back to the saloon the next morning as agreed, about 9 o'clock, and sat down, and was there about 10 minutes before defendant came in; when he came in, he said good morning Dick, and I said good morning to him; he then said the time is most up; he said he did not know where we could get a room, unless we went to John Story's; I told him I thought we could get a room nearer by, and then one of us said let's go and see, and we started out and went toward Bates' building, and we went up in the third story; the door was locked; I said I will go and get the key to Kinne's shop; I went then and saw Kinne and asked him for the use of that room for a few minutes, and Edward Peatt took the key and unlocked the room, and we all three went in; Peatt said, well, I guess you won't want me here, and went out; Nelson took the key and locked the door, and we both stepped into the bed room joining, and took off our coats, and came out in the main room. Nelson asked if the harness should be removed, and the stove and chairs; I said no, there will be no necessity for removing any thing but the chairs; I then took hold of one or two chairs and walked into the bed room and set the chairs down and turned to come out, and that was the last I knew; the next I recollect of, was being at home at my father's house; the first day I remember of, after that day, was the 14th of January; this fight occurred on the 26th day of December, 1859; my father lives about a mile from the village, and is a farmer; defendant is not a married man; I understood we were to have a fair *knock* down.

Nelson *v.* The People.

*Dewitt C. Bates*, testified among other things as follows: On the 26th day of December last, I went to my office at 9 A. M.; I heard a noise above pretty heavy and solid like throwing down a heavy body on the floor; it attracted my attention, then I heard a most unearthly and terrible groan, a forced groan, between a loud scream and a groan, I listened an instant, and heard it once or twice; I went up stairs into the third story; I went to the door, which was locked, heard no answer, when I called to him again to open the door; while I was at the door Mr. Cooper came up and suggested breaking open the door, and we broke it open and both entered the room; Allanson's head lay within a few feet of the door; I did not know him, his face and bosom were covered with blood; his face was badly disfigured; he was apparently dead; I had known Allanson from his boyhood, but I did not know who this person was on the floor until defendant spoke his name; there was a spasmodic action of his head and breast; defendant then stood in the middle of the room, covered with blood, and said, I have done it, I have whipped him, it was fair play; ask Dick, and he will say so; the sheriff then came in and took defendant out of the room; Nelson was taken before a justice of the peace, and I appeared and made the complaint; after the defendant left the room I saw a large knife; Judge Clyde held it in his hand when I first saw it; I did not see Allanson again for a long time; there was a chair in the room near where Allanson lay, a windsor chair, plank bottom; I discovered small spots of blood under the bottom of the chair and on the rounds.

*George C. Clyde*, called for the People, testified, among other things, as follows: I went up to the room after the affray was over, and found a man there called Allanson, and the doctor; I felt something under the carpet in the bedroom with my foot, and stooped down and picked it up and found it was a large knife. The knife was here produced and identified by the witness as the one he found; witness said he handed it to Dr. Merritt. Nelson was present when the knife was produced before Esq. McLean.

*George Merritt*, called, testified: I live at Cherry Valley; am a physician and surgeon; saw a wounded man, Allanson, at the house of Mr. Bates shortly after the fight; there were three or four wounds on his face; there were two under the right eye and on the right side of the upper lip, and a very slight wound across the nose; the wounds under the eye were nearly parallel with each other, extending round near to the corner of the right eye, and near one-fourth of an inch apart, circular form like a half moon; they appeared one and one-fourth inches long; the depth of the wounds was from a quarter to half an inch; the face was swollen; the wounds under the eye looked like cuts made by something, I do not know what; they were not bruised cuts, but appeared to me to be cuts, clean cuts. The lip was cut perpendicular, which appeared to be made with same thing as the cuts under the eye, and the cut across the nose very slight; did not bleed; in my opinion the wounds under the eye and on the lip could not have been made with the naked fist; they were made with a cutting instrument; no other wounds in the shape of cuts; the face was bruised and swollen a good deal; the eyes were closed, not blind; there was a swelling or ridge on the back part of the head; I saw some marks or wounds on the shoulders, on the point of each; two or three scratches on the throat; seemed to have been made by finger nails; he was not sensible, but he could be roused by special effort; I treated him, perhaps, two weeks or less; in five or six days he was convalescent; he was considerable delirious; I afterward measured the chair in the room where the fight occurred, and the distance between the hind legs corresponded with the distance between the marks on the shoulders of Allanson; the chair I measured was an old plank bottom windsor chair; defendant asked me if the wounds were made by a ring on his finger; I told him I thought they were not; he, defendant, said he knocked Dick down, and that he held Allanson by the hair of his head on his knee, and struck him with his right hand in his face.

*Cross-examined:* Defendant said they squared off for a fair

fight, and struck at each other, and Allanson did not hit him, but that he knocked Allanson down with his fist, and then drew his head upon his knee and struck him with his right hand in the face; this was at the time the defendant was claiming that the cuts were made with the ring; defendant showed me his right hand after the occurrence; it was swollen; defendant said the agreement was that when either called out enough, they were to stop, and said that it was a fair fight between two gentlemen; I was sworn before the justice, and testified that they were not made by the fist; these cuts could have been made by a dull knife; the depths of the wounds were a bad thing to judge of, for the reason that they were swollen badly; the face was badly beaten and discolored; the wounds healed up readily.

*William Bastian*, called by the People, said: He lived in Cherry Valley; knew the defendant, and made the knife shown in court, for defendant, at his request; it was intended for a bowie-knife; I have seen it in defendant's possession at different times since.

The district attorney here rested and the defendant called *Edward Peatt*, who testified: I roomed in the building where the fight was; in the morning about 9 o'clock, Allanson came to my room and wanted to know if he could have the use of the room for fifteen minutes; I told him I had nothing to do with the room; Mr. Kinne then came in, and Dick asked him if he could have it; Kinne said yes, and told me to take the key and unlock the door; I unlocked the room, and defendant and Allanson went into the room with me; the chairs were taken out of the room; Charlie carried some out, and I carried one out; I think all the chairs were carried out, but I will not be certain; the first thing Allanson did was to take off his clothes, and he laid them on a table in the square room; Charlie took off his coat and vest, and then I saw him take an instrument out of his pants and throw it on the bed; Allanson then stood out in the square room, and Charlie was in the bed room; we all went out in the square room; defendant spoke and said, "Ed., are you going to stay?" I said no,

and handed him the key and then left; Charlie had on a ring at the same time; the ring appeared more like a square top than this, the one shown me now by defendant; this ring now shown me he had worn for the last 15 months; this ring shown to me does not look like the same ring he then wore; that was more of a square top ring; I did not notice anything else on his hand or in his hand; the next I saw of Allanson was after the fight, and he was lying on the floor.

*Cross-examined:* I do not recollect of seeing a chair in the room after the fight; I think there were five or six chairs in all, in the room; I don't mean to be understood that all the chairs were taken out.

*John Hubbard,* called for the defendant, testified, among other things, as follows: I went to the room after the affray; I asked Allanson if there was any foul play or anything wrong; if it was all fair; he said it was all fair, just as they had agreed upon.

*Phillip R. Wales,* called by defendant: I was deputy sheriff when this transaction took place; I arrested defendant in the room where the fight took place; the night after the fight took place, the right hand of the defendant was badly swollen and inflamed; he took dinner with me that day; I had to cut his meat for him, and pour out his coffee; he could not use his hand; there was a scratch on his right hand, and a mark on his nose; there was skin broken on the ridge of his nose; he had a ring on his finger when I arrested him; this is the ring; I have no doubt of it.

*Cross-examined:* I did not notice the ring on his finger until in the evening of the same day of the fight, when he went to bed; that is the first I saw of the ring; I do not know that he had the ring on when I arrested him; he was away from me several times during the day, fifteen minutes to a time.

*Davis W. Bates,* called on the part of the people, testified: I heard defendant say the same day of the fight, that Allanson was a pretty man to go into a room to fight, as he had not got a clip at defendant.

The cause was then and there rested, and the district attorney stated that he would not insist to the jury, on the evidence in the case, upon a conviction of the defendant for an assault with an intent to kill or maim as alleged in the first six counts in the indictment, but he declined to abandon the counts in any manner, insisting that the defendant, under those counts, could be convicted of the minor offense of assault and battery, or under the statute of 1854.

Whereupon, and after the argument of counsel, his honor, L. C. TURNER, presiding judge, proceeded to charge the jury, and among other things as follows:

" The defendant is indicted for an offense of no ordinary character, at least in this county, and, although the evidence discloses a disgusting and brutal scene, it should not divert your minds from the impartial consideration of the real issue presented for your determination.

The indictment contains several counts; the district attorney, however, does not ask a conviction for a felony, as charged in either of the first six counts, but he asks a conviction upon the 7th and 8th counts, and insists that the defendant is guilty of the minor offense of a simple assault and battery in any event, and under any and all of the counts of the indictment.

The major offense, and the only one charged in the indictment which you are to pass upon, is for a violation of the law of 1854, which declares that any person, who, with intent to do bodily harm, and without justifiable or excusable cause, shall commit an assault upon the person of another with any knife, dirk, dagger or other sharp, dangerous weapon, shall, upon conviction thereof, be punished by imprisonment in a State prison for a term not more than five years, or by imprisonment in the county jail for a term of not exceeding one year.

You will, therefore, first consider and determine from the evidence that has been submitted to you, whether or not the defendant (Nelson), with intent to do bodily harm, and without justifiable or excusable cause, did commit an assault

upon the person of Allanson with any knife, dirk, dagger, or *other sharp, dangerous weapon.*

It is not disputed, indeed it is conceded, that these parties mutually agreed to go into a room and have a " fair fight; " that they did go into a room, lock themselves therein, and the result was that Allanson was dreadfully injured, and the defendant unhurt.

It is a disturbance of the public peace, promotive of disorder, violence and immorality, and a violation of law for two persons, by mutual agreement, to lock themselves into a room and fight; but the defendant is not guilty of the major offense as charged in the 7th and 8th counts of the indictment, although he intended to do bodily harm, and without justifiable or excusable cause, unless he committed the assault upon the person of Allanson with a *sharp, dangerous weapon,* no matter how badly Allanson may have been beaten, bruised and disabled; unless the assault was committed with some *sharp, dangerous weapon,* the defendant is not guilty.

The only evidence as to what took place immediately preceding the fight is that given by Allanson and Peatt (which was read by the judge to the jury), and there is no positive evidence that any *sharp, dangerous weapon* was used ; that such a weapon was used is only to be inferred from the wounds inflicted as described by the witness, Dr. Merritt. (The evidence of Dr. Merritt was read by the judge to the jury.)

You will therefore carefully scrutinize, and impartially consider the evidence before you, and if you determine therefrom that the defendant did assault Allanson with intent to do him bodily harm, and without justifiable or excusable cause, with *a sharp, dangerous weapon* as charged in the 7th and 8th counts of the indictment, or either of them, then you will render a verdict of guilty; but if you do not so determine or entertain a reasonable doubt in relation thereto, then render a verdict of not guilty.

Should you find that the defendant is not guilty of the major offense as charged in the 7th and 8th counts, then you

Nelson *v.* The People.

have the right, should you regard the evidence as warranting it, to find the defendant guilty of a simple assault and battery.

And as regards the commission of this minor offense, I charge you as matter of law, that, if the defendant and Allanson, by mutual agreement, went into the room to fight, and the defendant struck Allanson first, he is guilty of an assault and battery. That if Allanson struck the first blow, and the defendant only used sufficient force and no more than was necessary to defend himself, then he is not guilty, but although Allanson did strike first, and the defendant used more force and violence than was necessary to protect and defend himself, then he is guilty of an assault and battery."

The jury thereupon retired under the charge of a constable duly sworn, and afterward returned into court, and the foreman of the jury, in the presence of the defendant, handed the clerk their verdict in writing, which the clerk read as follows:

"We find the defendant guilty of assault and battery, with intent to do bodily harm with some sharp, dangerous instrument."

The court refused to receive said verdict, and directed the jury to amend their verdict, and if they intended to find the defendant guilty of the offense charged in the 7th and 8th counts in the indictment, to reconsider their verdict and to respond directly to these counts, to which refusal to receive, and direction to amend, the counsel for the defendant excepted. Whereupon the jury consulted together in the box without leaving court, and after such consultation, the foreman announced that the jury could not agree to find the defendant guilty under the seventh count, which had been read to them, and the court directed them to retire again, to which the defendant, by his counsel, excepted.

The jury again retired, under the charge of the same constable, duly sworn as aforesaid, and after being absent about twenty minutes, returned and rendered the following verdict, in the presence of defendant: "We find the defendant

guilty of the offense charged in the eighth count of the indictment."

The counsel for the defendant then moved the court in arrest of judgment, upon the grounds stated in the motion to quash the indictment, for the reason that the court was not properly constituted, and also on the ground that no offense was charged in the eighth count in the indictment, which motion, so made, the court overruled, to which decision the counsel for the defendant excepted.

The prisoner was sentenced to imprisonment at hard labor in the State prison at Auburn, for two years.

The cause was argued in this court, on the bill of exceptions brought up by the writ of error, by

*James A. Lynes*, for the plaintiff in error, and

*E. Countryman* (District Attorney), for the People.

The Supreme Court, after advisement, decided that the right or title of the justices of sessions to their office, could not be collaterally inquired into, but only by a direct proceeding against them by information, in the nature of a *quo warranto;* and that no error had been committed on the trial, and affirmed the judgment of the Court of Sessions.

Judgment affirmed.